**In re MT. FOREST FUR FARMS OF AMERICA, Inc.**

**No. 24331.**

District Court, D. Michigan, S. D.

Aug. 24, 1945.

The attorneys involved are listed in the findings [No. 1]. In addition to this—

Lester S. Moll, of Detroit, Mich., for Vermilion Bay Land Co., reorganized debtor.

C. J. Odenweller, Jr., of Cleveland, Ohio, for Securities and Exchange Commission.

LEDERLE, District Judge.

## Findings of Fact

1. This corporate reorganization proceeding of Mt. Forest Fur Farms of America, Inc., a Delaware corporation, is presently before the court on petitions for final allowances of fees and disbursements requested by the following applicants, in the following amounts:

| | Amount Claimed | |
| | Fees | Expenses |
| --- | --- | --- |
| Referees in Bankruptcy George A. Marston and Walter I. McKenzie, Special Masters, both of Detroit, Mich., | $ 25,000.00 | |
| Frank Fitzgerald, Trustee, of Detroit, Mich., | 24,500.00 | |
| Robert S. Marx, Carl Runge, and Lawrence I. Levi, General Counsel, all of Detroit, Mich., for Trustee, | 65,000.00 | $2,303.78 |
| Julian G. McIntosh, Special Counsel, of Detroit, Mich., for Trustee, | 18,120.00 | |
| Monaghan, Crowley, Clark & Kellogg, Special Counsel, of Detroit, Mich., for Trustee, | 2,500.00 | 56.57 |
| Fraser, Shumaker, Kendrick & Winn, of Toledo, Ohio, Counsel for Debtor, (including $500 fees of Charles S. Abbott, local counsel) | 52,500.00 | 85.44 |
| S. J. Dyer, Shareholder of Debtor and representative of a group of Indiana shareholders, Indianapolis, Indiana, | | 560.00 |
| Irwin H. Boesel, Shareholder of Debtor and of Michigan Mt. Forest Corporation, of which he was President, Springfield, Ohio, | 5,853.04 (including expenses) | |
| Harold R. Smith, Attorney, of Detroit, Mich., | 40,000.00 | 305.91 |
| Hugh R. Francis, of Detroit, Mich., Second Successor State Court Receiver for Michigan Mt. Forest Corporation, | 3,000.00 | |
| Harold M. Shapero, of Detroit, Mich., and J. Adrian Rosenburg, of Jackson, Mich., Attorneys for Contractholders, | 7,250.00 | 299.82 |
| Anderson, Wilcox, Lacy & Lawson, of Detroit, Mich., former Attorneys for stockholders committee and debtor corporation, | 35,000.00 | |
| John P. Neudorfer, of Detroit, Mich., First Successor State Court Receiver for Michigan Mt. Forest Corporation, | 2,000.00 | |
| Harley Waitman, J. Fred Wuerth, Clyde M. McGuffie, et al., shareholders in both the Debtor and the Michigan Mt. Forest Corporations, | 5,000.00 | |
| (For their attorneys, Hull, Brown & Fischer and Richard Ford) all of Detroit, Mich., | 11,012.50 | 869.45 |
| Ernest D. Skinner, George A. Lehman and John R. Westenbarger, beneficially interested in the stock and/or income from stock described as Claim No. 792, Royal Oak, Mich., | | 1,635.60 |

| | Amount Claimed | |
| --- | --- | --- |
| | Fees | Expenses |
| Edward T. Kelley and Darden & Brashear, all of Detroit, Mich., Attorneys for Stockholders Committee of Debtor since April 21, 1944, | 10,000.00 | 125.00 |
| Darden & Brashear, of Detroit, Mich., Attorneys for Stockholders Committee of Debtor from 1938 to April 21, 1944, | 7,500.00 | 108.00 |
| Stockholders Committee of Debtor, Albion, Mich., | 5,000.00 | 2,057.53 |
| Fowler & Fowler, of Knoxville, Tenn., Associate Counsel of Harold R. Smith in proceedings in Tennessee to reorganize Michigan Mt. Forest Corporation, | (No amount requested) | |
| Totals | $319,235.54 | $8,407.10 |

Objections were filed to practically all such petitions, and extensive hearings were held thereon, towards the conclusion of which counsel for the Securities and Exchange Commission presented the Commission's advisory recommendations.

2. The fur farm enterprise was organized to develop fur bearing animals for the commercial markets. Many thousands of investors contributed approximately one and a half million dollars to the enterprise. Various stock interests, muskrat ranching contracts covering pairs of muskrats, and marshland contracts for deeds to swamp acreage with trapping leases back to the corporation, were sold to the general public. Among properties acquired by the Debtor, were large tracts in the Louisiana swamps and bayous. An account of the use of this locality as the principal source of supply for the world muskrat market, which appears in the March, 1945, Readers' Digest, at page 77, under the title "Louisiana's Fabulous Muskrat Marshland," aptly summarizes trapping-lease practices which the Trustee has followed throughout this proceeding. Some mineral and oil rights were also acquired by Debtor in connection with the acquisition of the Louisiana property. The enterprise originated as a Michigan copartnership, which later transferred to Mt. Forest Fur Farm, a Michigan corporation. The present Debtor was incorporated as a Delaware corporation in March, 1928, and the Michigan corporation transferred the business to the Debtor and purportedly received 48% of the Debtor's capital stock.

3. On August 15, 1938, the Debtor filed herein its voluntary petition for corporate reorganization in accordance with the provisions of Section 77B of Chapter VIII of the National Bankruptcy Act, 11 U.S.C.A. § 207. On the same day, the petition was approved, and Frank FitzGerald, a competent attorney with considerable experience in corporate reorganization matters, was appointed Temporary Trustee. This appointment was later made permanent at a hearing held upon notice to all interested parties. Three days after institution of this proceeding, Robert S. Marx, Carl Runge and Lawrence I. Levi, outstanding members of the legal profession with a nationwide practice and a large staff of associates and assistants, were appointed general counsel for the Trustee, and Julian G. McIntosh, a competent attorney who possessed considerable background knowledge of the Debtor's complicated affairs, was appointed special counsel to assist with Louisiana property and tax matters. Under such appointments, these attorneys have represented the Trustee throughout. A competent and outstanding Toledo legal firm, Fraser, Shumaker, Kendrick and Winn, with some assistance from Charles S. Abbott as local counsel, represented the Debtor from the inception of this proceeding until the Board of Directors of the reorganized Debtor retained Lester S. Moll as attorney to represent the Debtor at these fee hearings. No petition for allowance has been filed herein by this latter attorney. Since the effective date of the Chandler Act, this proceeding has been conducted in accordance with the corporate reorganization sections thereof, 11 U.S.C.A. §§ 501–676. Upon request of the court, the Securities and Exchange Commission formally

appeared in this proceeding shortly after its institution. The representatives of this Commission have taken an active part herein. They have given unstintingly of their time and talent, and have rendered splendid public services in this connection.

4. At the time this proceeding was instituted, the Debtor had been involved for many years in the Michigan state court receivership case of Kimball v. Bangs et al., Wayne Circuit No. 180,924, which had been pending since March, 1930, and Debtor was on the brink of losing all its property to satisfy liens for receivership expenses. It had practically no income or cash resources. Funds were raised by subscription to pay the initial filing fee of this reorganization proceeding. An injunction in the state court receivership case purportedly enjoined parties in interest from seeking relief under the National Bankruptcy Act. Some of the interested parties went outside the jurisdiction of the state court, namely, to Toledo, Ohio, and there engaged attorneys who prepared and filed the necessary documents for instituting the instant proceeding.

5. Throughout the tumultuous and litigious history of the fur farm enterprise, its progress has been continuously hampered and impeded by internecine warfare between various groups and factions of stockholders and interested parties. This continued dissension has contributed materially to the complexity of this reorganization proceeding as well as to the necessary services of the Trustee and his counsel, and, particularly in the initial stages, counsel for the Debtor.

6. Immediately upon institution of this proceeding, attacks were made by Harry J. Merritt, State Court Receiver, and his attorneys upon the jurisdiction of this court, the bona fides of the reorganization petition, the order approving it, the appointment of a Trustee, and two restraining orders entered in aid of this court's jurisdiction. After a vigorous contest in this court, appeals were taken. The opinion affirming this court's decision, reported as In re Mt. Forest Fur Farms of America, 6 Cir., 103 F.2d 69, succinctly narrates the highlights of the Debtor's litigation to that point. Certiorari was sought and denied. Merritt v. Mt. Forest Fur Farms of America, 308 U.S. 583, 60 S.Ct. 105, 84 L.Ed. 488.

In the interim between this court's initial decision on the so-called jurisdictional phase and the affirmance thereof in the Circuit Court of Appeals, another group of shareholders, Cora L. Baker et al., represented by the attorneys for the State Court Receiver and another firm of attorneys, also contested this court's jurisdiction. This followed a course parallel to the first jurisdictional contest up to the point of filing appeal on March 16, 1939. This appeal was abandoned upon denial of certiorari to review the affirmance of the first jurisdictional decision.

In addition, while the first jurisdictional contest was pending before this court, the movants therein applied to the Circuit Court of Appeals for a writ of mandamus seeking dismissal of this proceeding. Counsel for the Trustee argued this matter orally, and the writ was refused.

The Trustee and his counsel collaborated with counsel for the Debtor in rendering the necessary services in the jurisdictional phase of this proceeding.

7. Four days after the Trustee's appointment, he sought and received approval of the first of a series of very successful trapping leases which he consummated with the assistance of his special counsel. This heralded a new era in the Debtor's business, whereby a vigorous program of developing trapping potentialities was initiated and carried out in place of the lethargic waste of Debtor's assets which had characterized its management prior to institution of this reorganization proceeding. These leases were the source of the first income of any consequence produced for the Debtor in a considerable time.

8. A week after institution of this proceeding, an order was entered on the Trustee's petition requiring several large oil and sulphur companies to show cause why they should not be enjoined from further exploitation of Debtor's Louisiana property and required to account for the proceeds of past exploitation. The respondents denied this court's jurisdiction and that Debtor had any interest in the minerals and oils. Hearings on this mineral contest were adjourned until the so-called general jurisdictional phase of this proceeding was finally determined. Thereafter, this so-called mineral phase was prosecuted vigorously. See: In re Mt. Forest Fur Farms of America, 6 Cir., 122 F.2d 232, certiorari denied 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561, rehearing denied 315 U.S. 826, 62 S.Ct. 622, 86 L.Ed. 1222. A settlement was consummated with approval of this court in June, 1942, after notice to interested par-

ties. Under this settlement, the Debtor received cash of $225,000, a royalty of 9¢ per ton on all future sulphur production, approximately 1/30th royalty on all future oil production, and Moran and Heller, owners of an override on Debtor's mineral interests, agreed to pay 8% of all reorganization expenses, including the allowances under consideration.

Petitions for compensation to date were filed in November, 1942, and were heard by a Referee in Bankruptcy, sitting as Special Master. Upon suggestion of the Securities & Exchange Commission, each petitioner, with the exception of counsel for the Debtor, made an allocation of the part of his application which related to this so-called mineral phase. No exceptions were filed to the report and recommendation of the Special Master on this mineral fee matter, and order confirming the same was entered on December 24, 1942. This order provided that the allowances therein confirmed constituted final allowances for services performed in connection with the mineral phase of this proceeding. These fees were paid at the time of entry of such order and no appeal was taken therefrom. All parties, except counsel for the Debtor, have conceded that the matter of allowances connected with the mineral phase of this proceeding is res adjudicata, and that disallowed requests connected with such phase should not be considered.

9. In 1939, the Trustee and his counsel instituted proceedings seeking rejection of certain executory contracts for the conveyance of 40% of Debtor's Louisiana mineral rights to Detroit and Louisiana attorneys for the State Court Receiver for services in connection with the state court receivership.

As a result thereof, the contracts of the two Louisiana attorneys were rejected by agreement, and they were given the right to file claims herein on a quantum meruit basis for services to date of rejection. Claims covering these services were ultimately heard by a Referee, sitting as Special Master, and no exception being taken to his report recommending a combined fee of $25,000 to them for legal services, the report was confirmed.

After a hearing, the Detroit attorneys' contract with the State Court Receiver was rejected in this court, and appeal taken. After the appeal record was filed, the appeal was dismissed in June, 1942, at the time of the mineral settlement, as such settlement also included a compromise of the receivership claims arising out of the state court receivership allowances. Thereby, the Receiver's claim for fees allowed by the State Court in the amount of $35,000 was compromised for $6,000, and the claims of the Detroit attorneys for the Receiver, totalling $90,000, were compromised for $29,000.

10. Following disposition of the jurisdictional and mineral phases of this proceeding, which made heavy demands upon the time of court appointees and counsel for the Debtor, the next large undertaking in this proceeding was the hearing and disposition of some 3300 claims of stockholders, ranching contract holders, marshland contract holders, unit holders and creditors. Extensive hearings were held before the Referees, acting as Special Masters, from February, 1942, until July, 1944. These claims had been filed under notices and orders therefor, the first of which the Trustee and his counsel had obtained three months after institution of this proceeding. Counsel for the Trustee performed the bulk of the necessary legal work in this connection, including notifying interested parties, filing objections to claims, conducting hearings on objections, conducting a voluminous correspondence necessitated particularly by the number and inexperience of thousands of small investors, and preparing all findings and reports filed by the Special Masters, with the exception of finding and certificate on review in connection with one small stock interest to which two adverse parties claimed ownership.

Determination of these claims was not aided by the activities of the second successor State Court Receiver and his counsel in this connection.

11. One of the parties to the state court receivership case is the Mt. Forest Fur Farm, a Michigan corporation. The sole asset of the Michigan corporation was its claim to ownership of 48% of the Debtor's capital stock. Ownership of this stock is disputed by the so-called "Westenbarger group," headed by one John Westenbarger. Westenbarger claims that all this stock was purchased by him for $1,000. The validity of this Westenbarger transfer was attacked in the state court receivership case. A settlement was reached and incorporated into a stipulation filed in that case, whereby, among other things, the Westenbarger group and the Michigan corporation group were each to receive roughly one-half of

the income of the stock. Westenbarger is now seeking to have such stipulation cancelled in the state court receivership case.

Late in 1943, Hugh Francis, second successor State Court Receiver, appointed by the state court to represent all persons claiming adverse interests in this 48% of the Debtor's stock, and his counsel, Harold R. Smith, intervened in this reorganization proceeding. At the time of his appointments as counsel for the first and second successor State Court Receivers, Mr. Smith represented privately one factional interest, the so-called Westenbarger group. Mr. Smith also claims a part of this Westenbarger stock individually. His formal intervention in the instant proceeding has been solely in the name of the second successor State Court Receiver.

In connection with the matter of determining claims in this reorganization proceeding the Trustee and his counsel filed objections to Claim No. 792, the claim of the Michigan corporation covering 48% of the Debtor's stock. Thereupon, a dispute arose between the so-called Westenbarger group and the Michigan Corporation or Bangs group as to which was to defend said claim against the Trustee's objections. The Westenbarger group filed a petition in the state court receivership case for the appointment of a receiver for the Michigan corporation. Thereupon, the Bangs group petitioned the District Court in Tennessee for the corporate reorganization of the Michigan corporation. One allegation of such Tennessee petition for reorganization of the Michigan corporation was a claim to ownership of the Louisiana mineral rights owned by the Debtor herein, the Delaware corporation. The Tennessee District Court issued an order enjoining further proceedings in any court pertaining to the Michigan corporation.

In an attempt to avoid another tangent of prolonged litigation suggested by these legal maneuvers, the Trustee and his counsel summoned interested parties to a conference in Knoxville, Tennessee, in March, 1943. As a result thereof, a proposed settlement agreement was entered into, which contemplated disposition of all outstanding controversies existing among the Trustee, the Michigan Corporation or Bangs group, the Westenbarger group, and a group of so-called Unitholders who had purchased units of interest in the Michigan corporation during the pendency of the state court receivership case. This proposed compromise was abandoned when the Michigan state court filed a written opinion in June, 1943, overruling a request for reconsideration of its first disapproval thereof.

This compromise contemplated disposition of the Michigan corporation claim of 48% of the Debtor's stock by allocating thereto 25% (instead of the present 31%) of the stock in the reorganized Debtor, out of which said 25%, 11½% was to go to the Westenbarger group and the remainder to the Michigan corporation or Bangs group, subject to a distribution thereof to the Unitholders. The consummation of this compromise would have materially shortened this Debtor's corporate reorganization and the state court receivership case.

The Tennessee District Court dismissed its proceeding in November 1943, and appeal from such decision was later dismissed by the Circuit Court of Appeals.

The Trustee and his counsel and counsel for the Securities and Exchange Commission participated in such Tennessee proceeding. With the concurrence of the Securities and Exchange Commission and counsel for the instant Debtor, the Trustee and his counsel took such action as necessary to protect the interests of this estate in such Tennessee proceeding.

12. In the interim, Mr. Smith, in the name of the State Court Receiver, instigated and prosecuted a number of proceedings against the Trustee herein for the purpose of enhancing the position of the state court receivership. Among these was a petition seeking to modify the restraining orders entered at the inception of this proceeding in aid of this court's jurisdiction. In December 1943, an order was entered denying his petition to modify and requiring adverse claimants to this disputed 48% of Debtor's stock to litigate their controversy in this reorganization proceeding. An appeal was taken by the second successor State Court Receiver, concurred in by the Waitman Group mentioned in finding 16(n) hereof. This appeal proceeded to the point where briefs were filed, and was then settled in connection with the settlement incorporated into the Plan hereinafter referred to. The necessary legal work to protect the interests of this estate in this connection was performed by counsel for the Trustee.

13. During the summer of 1944, claims against the Debtor for federal income taxes were compromised. One of these was a claim arising out of deficiencies on the

1926–1927 returns of the Michigan corporation, for which the Government claimed this Debtor liable as transferee of the Michigan corporation's assets. This claim, in the amount of $30,000, was compromised for $10,000. The other was a claimed deficiency of $180,000 growing out of accruals for administration expenses deducted in the Trustee's income tax returns during the years of this reorganization proceeding, as well as deductions of compensation and expenses in connection with the mineral phase of this proceeding. The Government claimed these deductions were improper because they represented additions to capital and not deductible expenses. Under the compromise, the accruals of administration expenses were approved subject to a review upon termination of this proceeding, and the mineral-cost part of the claimed deficiency was compromised for $50,000.

The necessary negotiation and legal work in connection with settlement of these tax claims were performed by counsel for the Trustee.

14. In May, 1944, the Trustee's proposed Plan was filed. It was approved by the Securities and Exchange Commission after counsel for the Trustee argued orally before the full Commission for such action. A number of hearings were held thereon before the Referee, sitting as Special Master. Amendments were proposed, and the preliminary approval of the Plan for submission to stockholders and creditors was recommended by the Special Master on September 25, 1944. This recommendation was confirmed in October. Counsel for the Trustee submitted the Plan to the thousands of interested parties and presented the report of such action to this court. The Plan was confirmed on November 27, 1944.

The Plan, as confirmed, is concededly a compromise, mainly of a number of potential lawsuits which could have kept this Debtor embroiled in litigation for many more years. It is substantially the plan advocated by the Trustee and his counsel throughout this proceeding as an equitable recognition of the rights of the investing public, except that these court appointees had advocated a non-recognition of the Michigan corporation claim to 48% of Debtor's capital stock, which the Trustee claimed was fraudulently issued by interlocking directorates of the Michigan and Delaware corporations, and, further, that the Westenbarger Group's claim thereto was invalid because purchased in collusion with the former State Court Receiver and should not be recognized beyond the one thousand dollars cash for which Westenbarger had purportedly purchased 48% of the Debtor's stock.

In brief, the Plan settles the controversy over this 48% of the Debtor's stock by providing that 31% of the stock of the reorganized Debtor should be issued to the second successor State Court Receiver in consideration for his surrendering certificates for 48% of the Debtor's stock, leaving for determination in the state court receivership case whether the Westenbarger Group or the Michigan Corporation (Bangs) Group owns such stock. The Debtor's "A" stock, which was preferred as to liquidation, is exchangeable on the ratio of 6 shares of stock in the reorganized Debtor for 5 shares of old stock. "B" stock is exchangeable share for share. "C" stock, all comprising a part of the Westenbarger-Michigan Corporation disputed 48%, is eliminated in conjunction with compromise of the disputed 48% of the old for 31% of the new stock. Ranching contract holders, by waiving their claims for breach of their contracts, get stock in the reorganized Debtor upon the same basis of exchange as contract holders had been entitled to exchange such contracts for "B" stock during 1928 and 1929, prior to institution of the state court receivership case. "C" marshland contract holders, in exchange for warranty deeds to the Debtor of acreage deeded to them and a cancellation of their leases running to the Debtor, receive back in cash the original purchase price they paid, plus accrued interest. All general unsecured creditors are paid in full. All holders of State Court Receiver's certificates for moneys contributed to pay taxes, are paid in full. The principal of preferred labor claims is paid in full and promissory notes given for accrued interest. A Voting Trust of five voting trustees was set up, composed of Messrs. Harold R. Smith, Edward T. Kelley and Richard Ford, of Detroit, Scott Ford, of Jackson, and S. J. Dyer, of Indianapolis, representatives of various factional interests in the Debtor, who are compensated at the rate of $100 per year.

15. The Trustee has consummated the Plan, and executed the necessary documents of transfer to the reorganized Debtor, now named the Vermilion Bay Land

Company. The Voting Trustees met and elected themselves directors' of the reorganized Debtor. The directors met and elected officers as follows: Harold R. Smith, of Detroit, President at an annual salary of $3,600; Edward T. Kelley, of Detroit, Secretary at an annual salary of $600; Ernest D. Skinner, of Royal Oak, Michigan, Treasurer and Assistant Secretary at an annual salary of $1,200, with an arrangement for an allowance up to $1,200 annually for rent and stenographic services in maintaining the corporation's business office in conjunction with his suburban real estate office.

The reorganized Debtor is not an operating company. It presently owns some 50,000 acres of land in Louisiana, has on hand some $125,000 cash, and has an annual income of approximately $80,000 from oil, sulphur and muskrat trapping royalties. Ordinary administration expenses of this estate have been paid. Fees and expenses connected with the mineral phase of this proceeding have been paid. Administrative allowances of the state court receivership up to the time of institution of this reorganization proceeding have been paid out of this general estate. The Plan has been consummated. The Trustee has filed his final account and petitioned for entry of a final decree. Hearing thereon has been held, and the decree will be entered upon termination of this fee matter, which is the only undisposed of matter. Such decree will approve the Trustee's account, close the estate, and limit to five years the time for exchange of securities.

16. The individual applications will be considered under alphabetical subdivisions of this finding. In this connection, no consideration is being given to the disallowed portion of requests for fees connected with the mineral phase of this proceeding.

(a) The Referees in Bankruptcy of this court, acting under references as Special Masters, very ably heard, determined and reported a number of special matters in connection with this reorganization, spent considerable time thereon, and relieved the court of innumerable detail and time-consuming matters. They were assisted in the difficult and arduous task of preparing Master's findings and reports by counsel for the Trustee, who prepared all but one report on a small claim.

By agreement between the Judges of this Court and the Referees in Bankruptcy, from August 5, 1938 until Subdivision (j) was formally added to Local Bankruptcy Rule 124 on July 23, 1943, no fees were to be requested by, or allowed to, the Referees for services in any bankruptcy matter referred to them as Special Masters.

Their request for fees for services as Special Masters prior to July 23, 1943, is being disallowed.

The reasonable value of the Special Masters' services rendered in this proceeding since July 23, 1943, is $5,000.

(b) Under the seven-year trusteeship of Frank FitzGerald, the Debtor's business was very ably and efficiently managed, its assets conserved and enhanced, the estate administered, its involved litigation conducted, and a successful Plan of Reorganization brought to fruition. In the light of the considerable time and talent the Trustee has spent in this proceeding, his request for a final allowance in the amount of $24,500 appears reasonable.

An attack on the reasonableness of his requested allowance for managing and administering the estate, conducting the litigation and formulating and consummating a Plan of Reorganization, was made by the management of the reorganized Debtor. The amount requested by the Trustee, plus a $2,000 interim allowance made him, is some $2,000 per year less than present management salaries.

The reasonable value of the Trustee's services rendered in this proceeding is $24,500.

(c) Robert S. Marx, Carl Runge and Lawrence I. Levi, and their associates and assistants, have performed a monumental task and rendered highly valuable services as general counsel for the Trustee from the time of their appointment at the inception of this proceeding down to and through their able conduct of the final fee hearings and the consummation of the Plan. They have participated in all phases of the proceeding, which has made great demands upon their time and talent. They have devoted in excess of 6500 hours of necessary legal services to this estate. They are largely responsible for the orderly administration of this estate and the successful reorganization of the Debtor. In view of the vast amount of services performed, the size of the estate, the number and intricacy of the problems encountered, the responsibility involved, the learning, skill and time employed, the necessity for the services and the results accomplished,

their request for fees in the amount of $65,000 appears modest.

The reasonable value of their services rendered in this proceeding is $65,000, and their reasonable expenses, properly incurred in this proceeding, amount to $2,303.78.

(d) Julian G. McIntosh, as special counsel for the Trustee to assist with special Louisiana property and tax matters, has rendered very valuable specialized services for this estate. The success of the Louisiana property development is due largely to his able efforts, and he was of assistance to general counsel in the jurisdictional phase of this proceeding.

The reasonable value of his services rendered in this proceeding is $12,500.

(e) Monaghan, Crowley, Clark & Kellogg, appointed as special counsel for the Trustee on August 19, 1938, to represent the Trustee in connection with an appeal in the state court receivership case, which was later dropped, performed valuable specialized services for the Trustee at the commencement of this proceeding. During the fee hearings, $1,000 of their $2,500 request was withdrawn because it covered services rendered for individual litigants whom they were representing in the state court receivership case. They have been paid $500 on account.

The reasonable value of their uncompensated services rendered in this proceeding is $500, and their reasonable expenses, properly incurred in this proceeding, amount to $56.57.

(f) Fraser, Shumaker, Kendrick & Winn, as counsel for the Debtor from the inception of this proceeding to the time of commencement of the final fee hearings, rendered very valuable services to this estate, particularly in the jurisdictional phase hereof. They have co-operated with the court appointees in administering the estate, conducting litigation, and the formulation of a successful plan.

In so far as their present request contemplates consideration of services performed in connection with the mineral phase of this proceeding, it is being disallowed.

The reasonable value of their other services rendered in this proceeding is $17,500, which includes $500 allocable to their local counsel, Charles S. Abbott. Their reasonable expenses, properly incurred in this proceeding, amount to $85.44.

(g) S. J. Dyer, a shareholder of the Debtor, represented a group of Indiana shareholders and made several trips to Detroit to attend hearings and conferences when the Plan was being formulated, often at the request of counsel for the Trustee. He was of some aid in formulating the plan. He has requested merely reimbursement of out-of-pocket expenses in the amount of $560, without any request for fees.

His reasonable expenses, properly incurred in connection with the plan approved in this proceeding, amount to $560.

(h) Irwin H. Boesel, shareholder and former president of the corporation, has requested fees of $5,853.04, including reimbursement of expenses.

Services rendered and items of expense incurred prior to institution of this proceeding are being disallowed, as they were not in contemplation of or in aid of this proceeding.

Of the balance, $822.46 represents actual out-of-pocket expenses. Part of his services and expenses were connected with protecting his private interests. During the early stages of this proceeding, he rendered some assistance to the Trustee and his counsel in understanding various factional problems with which they were confronted. This aided in the administration of this estate and the formulation of the Plan.

The reasonable value of such services rendered in this proceeding in connection with the administration of this estate and formulation of the Plan is $500, and his reasonable out-of-pocket expenses, so incurred, amount to $250.

(i) Harold R. Smith, appearing formally herein as state court appointed attorney for the second successor State Court Receiver, also represents privately the so-called Westenbarger Group, himself as having a private interest in the Westenbarger claims, and was state court appointed attorney for the first successor State Court Receiver. He has requested out of this reorganization estate an allowance of fees in the amount of $40,000 and expenses of $305.91. This latter amount represents a balance of disbursements over the amount of $1,400 paid thereon by Lehman & Skinner, members of the Westenbarger Group (claimed by them in application considered in subdivision (o) hereof), and $240.71 paid to him by Hull, Brown & Fischer, attorneys for the Waitman Group, mentioned hereinafter in subdivision (n) hereof.

At the time of filing his petition for fees, Mr. Smith had been in this proceeding

by formal intervention for one year of its then six-year existence. Although at times it is difficult to reconcile his various representations, his services were performed for the promotion and benefit of the various special interests he represents. Much of his service was not connected with this proceeding. A great amount of his time and expenses is directly connected with prosecution and administration of the state court receivership case. Some of his services antedated his intervention herein. Of the 1676 hours' work scheduled for the period since November, 1942, 800 hours were performed prior to October 15, 1943, the date he prepared and filed petition for intervention in this proceeding. In many phases of this proceeding, he duplicated the work of counsel for the Trustee. Substantially all his services were unnecessary to, in part antagonistic to, and in part hampered, the orderly administration of this complicated estate and the formulation of a plan. Other than representation of his special clients and interests, his participation herein was that of a volunteer. He did not benefit the general estate, either in the administration thereof or in the formulation of a plan. For the type of services rendered, the amount of his request is unreasonable and excessive. He has a fee arrangement with various of the parties he represents. He should look to the private interests and the state court estate he represents for his compensation.

(j) Hugh R. Francis, second successor State Court Receiver, in whose name Mr. Smith performed a great part of the services just previously described, for the most part was a passive onlooker in this proceeding. He represented and served special interests. His actual participation in this proceeding was slight and of no direct or tangible benefit to this general estate, either in the administration thereof or in the formulation of a plan. He should look to the state court estate he represents for his compensation.

(k) John P. Neudorfer was appointed first successor State Court Receiver. He never intervened in this proceeding. His services were performed as a state court fiduciary in the state court proceeding. Such connection as he had with this reorganization proceeding was incidental, and of no benefit to this reorganization estate. He should look to the state court estate he represented for his compensation.

(1) Harold M. Shapero and J. Adrian Rosenburg represent a group of ranching contract holders, whose equitable claims were conceded throughout by the Trustee and his counsel while questioning the legal enforcibility thereof. These contracts received recognition in the Plan. These attorneys performed no services which aided in the general administration of this estate. Their services in connection with the formulation of a plan were primarily for, and of benefit to, their special clients, and did not aid the general estate. They have a lien for fees on stock to be distributed to their clients, to which they should resort for their fees for services rendered on behalf of such clients.

(m) Anderson, Wilcox, Lacy & Lawson were attorneys for a stockholders' committee and for a short time, the Debtor, prior to the time the Toledo attorneys were retained and instituted this proceeding on behalf of the Debtor. These attorneys were instrumental in preserving assets of the Debtor that were finally acquired by the Trustee at the time petition for reorganization was filed. This was of value to the Debtor, but these attorneys did not participate in this proceeding. While their impartial efforts in attempting to break the impasse resulting from the state court receivership are commendable, these attorneys did not render services in contemplation of this proceeding, aid in the administration of this estate nor in the formulation of a plan. The Act does not provide for an allowance for this type of service.

(n) Harley C. Waitman et al., a group of shareholders in both the Delaware and Michigan corporations, have petitioned for the allowance of $5,000 fees to themselves and, nominally for reimbursement as expenses, of $11,102.50 fees paid to their attorneys, Hull, Brown & Fischer and Richard Ford, and other expenses of $869.45. This last item includes the aforementioned $240.71 paid Harold R. Smith in March, 1944, as one-half the cost of printing record on appeal from this court's decision refusing to modify its restraining orders and requiring adverse claimants to 48% of this Debtor's stock to litigate their controversy in this proceeding. Fees set by, and paid to, their counsel are unreasonable as compared to other fee requests and allowances herein. Part of the legal services were performed in conjunction with the attorney for the second successor State Court Receiver, and not compensable for the rea-

sons assigned to that petition for fees. This Waitman Group and their counsel performed no services, nor incurred any expenses, which aided in the general administration of this estate. Their services and expenses in connection with the formulation of a plan were primarily for, and of benefit to, their special interests, and did not aid the general estate.

(o) John Westenbarger, Ernest D. Skinner and George A. Lehman, beneficially interested in the stock of the Michigan corporation, have petitioned for expenses of $1,-635.60. These men are members of the so-called Westenbarger Group, claiming to own through the Michigan corporation 48% of Debtor's stock purchased by Mr. Westenbarger for $1,000, which is the subject matter of the state court litigation. Their disbursements were expended primarily to finance the activities of the attorney for the first and second successor State Court Receiver. This attorney did not, however, appear in this proceeding as attorney of record for this Westenbarger Group other than in filing their present application. The Westenbarger Group never formally intervened herein. As expenses to be reimbursed out of this general estate, their request is subject to the specific objections assigned to their attorney's application for fees and expenses. The expenditure of these amounts did not aid in the general administration of this estate nor in the formulation of a plan.

(p) Edward T. Kelley and Darden & Brashear, attorneys for a stockholders' committee since March, 1944, have petitioned for fees of $10,000 and expenses of $125. Darden & Brashear have petitioned for fees of $7,500 and expenses of $108 for legal services ante-dating Mr. Kelley's retainer. In the initial stages of this proceeding, Darden & Brashear were counsel for the original State Court Receiver, and Mr. Kelley was associated with Monaghan, Crowley, Clark & Kellogg, special counsel for the Trustee herein. As counsel for the stockholders' committee, these petitioners performed no services which aided in the general administration of this estate. Their services in connection with the formulation of a plan were primarily for, and of benefit to, their special clients, and did not aid the general estate.

(q) Floyd M. Langworthy et al., stockholders' committee, represented by the attorneys just mentioned, performed no services which benefited the general administration of the estate or aided in the formulation of a plan. Their services were primarily for, and of benefit to, their private interests.

(r) Fowler & Fowler, associate counsel for the second successor State Court Receiver in the Tennessee proceeding, have petitioned for an unspecified amount of fees. The Trustee was represented by his counsel at the Tennessee proceeding, and, with the concurrence of the Securities & Exchange Commission and counsel for the Debtor, took such steps as necessary to protect the interests of this reorganization estate. These applicants performed no services in the instant proceeding, nor any which aided in the administration of this estate or in the formulation of the Plan. They were appointed by another court, to represent an alleged stockholder of this Debtor, in a third proceeding, and should look to the special estate they represented for compensation.

### Conclusions of Law

1. The reorganization petition herein, under Section 77B of Chapter VIII of the National Bankruptcy Act, having been approved within three months of the effective date of the Chandler Act, Chapter X of such latter Act applies in its entirety to this proceeding. 11 U.S.C.A. § 676(c).

■ 2. When an order is entered allowing final compensation on a concluded phase of a corporate reorganization proceeding under Chapter X of the Chandler Act, and no appeal is taken either within 30 days after written notice thereof, proof of service of which has been filed within 5 days after service, or within 40 days after entry of such order if such notice be not served and filed, the order becomes final and res adjudicata of all matters therein decided. Consequently, any disallowed portions of requests for fees connected with the mineral phase of this proceeding are being disallowed. 11 U.S.C.A. §§ 48, 650.

■ 3. An understanding between a court and Referees in Bankruptcy thereof, that no fees should be allowed them in connection with services rendered by them as Special Masters in matters referred to them under the National Bankruptcy Act, respected and followed for many years, is a rule of court which must be adhered to.

■ 4. Local Bankruptcy Rule 124(j) became effective July 3, 1943, and applied prospectively only to services performed by the Referees as Special Masters. Con-

sequently, the request of the Referees for the allowance of fees as Special Masters for services performed prior to July 3, 1943, is being disallowed.

5. Having in mind the conservation and preservation of this estate and the interest of creditors and stockholders therein, the extent and nature of the services of the various applicants for allowances for services and disbursements, the labor, time and trouble involved, the results achieved, the character and importance of the matters, the learning, skill and experience required and exercised, the size of the estate, the responsibility undertaken, the ability of the Debtor to pay, the contingency or absoluteness of fees, and having further in mind that the following applicants have rendered services and properly incurred expenses in this proceeding in the amounts set opposite their respective names, which this court has found to be reasonable, an order will be entered fixing the amounts to be paid to each of the following applicants, respectively, as follows, in accordance with 11 U.S.C.A. § 641, viz.:

| | Fees | Expenses |
|---|---|---|
| George A. Marston & Walter I. McKenzie, Referees in Bankruptcy, as Special Masters, | $ 5,000.00 | |
| Frank FitzGerald, as Trustee, | 24,500.00 | |
| Robert S. Marx, Carl Runge and Lawrence I. Levi, as general counsel for the Trustee, | 65,000.00 | $2,303.78 |
| Julian G. McIntosh, as special counsel for the Trustee, | 12,500.00 | |
| Monaghan, Crowley, Clark & Kellogg, as special counsel for the Trustee, | 500.00 | 56.57 |
| Fraser, Shumaker, Kendrick & Winn, as counsel for the Debtor (including $500 fees allocable to their local counsel, Charles S. Abbott) | 17,500.00 | 85.44 |

6. Having in mind the foregoing general considerations in allowing fees and expenses, and having further in mind that the following applicants have rendered services and properly incurred expenses in aiding with the administration of this estate or the formulation of the Plan approved herein, in the amounts set opposite their respective names, which this court has found to be reasonable, such order will fix the amounts to be paid each of the following applicants, respectively, in accordance with 11 U.S.C.A. § 642, as follows:

| | Fees | Expenses |
|---|---|---|
| S. J. Dyer, shareholder, | | $560.00 |
| Irwin H. Boesel, shareholder and former president, | $500.00 | 250.00 |

7. The following applicants have not rendered any services or incurred any expenses in this proceeding, or in connection with the administration of this estate or the plan approved herein, and such order will, therefore, disallow in toto their applications for the allowance of fees and reimbursement of expenses, in accordance with 11 U.S.C.A. §§ 641, 642, viz.:

Harold R. Smith;
Hugh R. Francis;
John P. Neudorfer;
Harold M. Shapero and J. Adrian Rosenburg;
Anderson, Wilcox, Lacy & Lawson;
Harley C. Waitman, et al, and their attorneys, Hull, Brown & Fischer and Richard Ford;
John Westenbarger, Ernest D. Skinner and George A. Lehman;
Edward T. Kelley and Darden & Brashear;
Darden and Braschear;
Floyd M. Langworthy, et al;
Fowler & Fowler.

8. Such order shall also specifically disallow the portion of any partially allowed petition for fees and expenses which is not by such order specifically allowed.

9. For convenience, these findings and conclusions, together with order in accordance herewith, are being mimeographed, and a mimeographed copy of each docu-

ment will be mailed to each applicant, at the respective addresses listed in finding one, and to counsel for the reorganized Debtor, and proof of such mailing filed simultaneously with entry of such documents.