**TEASDALE v. SEFTON NAT. FIBRE CAN CO. (two cases).**

Nos. 10569, 10591.

Circuit Court of Appeals, Eighth Circuit.

Aug. 13, 1936.

Kenneth Teasdale, of St. Louis, Mo., pro se.

Ethan A. H. Shepley, of St. Louis, Mo., for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

Appellant appeals from an order denying his application for allowance of attorney's fees in proceedings under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). He applied for and was allowed an appeal by the District Court on January 21, 1936, in No. 10591. He assumed that there might be some question as to the right of the District Court to allow the appeal, in that it might be contended that the claim for attorney's fees was an expense incurred in the course of administration, and not such a claim as is referred to in section 25a (3) of the Bankruptcy Act, as amended (11 U.S.C.A. § 48 (a) (3). He therefore sought and was allowed an appeal in No. 10569 by this court. In that these appeals were consolidated and the matter is properly before the court, we pass the question without further comment.

On January 26, 1935, the appellee filed its petition in the court below for reorganization under section 77B of the Bankruptcy Act. The petition was approved and the debtor continued in possession. It appears that, some time prior to the filing of the petition, one William P. Hicks had

been the president of the company. He had been deposed and the management taken over by the representatives of the prior preferred stockholders in accordance with the corporate powers given them to control the board of directors upon certain default in dividend payments. The stock of the company was classified as prior preferred, preferred, Class A common, and Class B common. Hicks owned approximately one-third of the preferred stock and one-half of the Class A and Class B common. The petition under section 77B was filed at the instance of the new board. On April 3, 1935, the debtor filed a plan for reorganization, to which Hicks, by his attorney, the appellant herein, filed objections. The Container Corporation, owner of two-thirds of the preferred and one-half of the Class A common stock, also filed objections. It is not necessary to consider the various details of the plan and the objections thereto. Suffice it to say that the debtor contended in the first proposed plan that the assets were not sufficient to pay all the creditors and to liquidate the prior preferred stock, and that, therefore, the preferred and common stockholders had no equity in the corporation and should not be entitled to vote upon the approval of the plan. The court refused to find the preferred stock without value and to be unaffected by the proposed plan, and, in that the plan had not received the approval and acceptance of the objectors, it was not approved. Appellant studied the first plan, proposed objections, examined witnesses in court called in behalf thereof, and produced testimony in opposition thereto. He also argued and briefed the matter.

On July 3, 1935, an amended plan was filed, and on September 25, 1935, Hicks and the Container Corporation filed separate objections. While this plan was under consideration, a proposed plan of reorganization was, by leave of the court, filed by Hicks, which involved, among other things, the investment of new capital and the assumption of the management by a new company. There were negotiations with various parties concerning the Hicks plan, the proposal was submitted to the court, and a hearing was had. However, before any ruling was had on this plan, and before the court ruled upon the amended plan, the debtor filed a second amended plan of reorganization. This second amended plan received the study of the appellant, and, on his recommendation, his client filed no objections thereto. This plan was finally adopted on September 10, 1935, and in the order of approval the court disapproved the Hicks plan and the first amended plan filed by the debtor. It appears that the appellant kept in close touch with all of the proceedings and the detailed administration of the affairs of the debtor from the time the first petition was filed until the final decree. It does appear, however, that in the early stages of the proceeding, he took the position that a reorganization was unnecessary and ill-advised.

It may be noted that the only creditors affected by any of the plans submitted were the Container Corporation and Waldheim Realty and Investment Company, each holding a note for $22,000. The various plans under consideration dealt primarily with a readjustment of the stock interests and capital stock structure. The stock interests of three parties were involved primarily, the prior preferred stockholders, the Container Corporation, and Hicks. The outstanding capital stock prior to reorganization was as follows:

(1) Prior preferred stock, 2,000 shares, bearing accumulated dividends at the rate of 7 per cent., par value $100 per share. Upon liquidation or sale of all the assets, the holders of the stock were entitled to be paid full par value with accumulated dividends to the date of payment before any sums were distributed among the holders of the preferred or common stock. This stock had no voting power, except upon the occurrence of certain events.

(2) Preferred stock, consisting of 3,807 shares of no par value, entitled to accumulated dividends at the rate of $6 per share before any dividends were paid on common stock, but only after the prior preferred stock had been paid, or provisions made for payment of, all accumulated dividends. This stock had no voting power, except that a consent was required for certain specific purposes. Of this stock, the Container Corporation of America held 2,149 shares; W. P. Hicks, 1,219 shares; and four other stockholders the remaining 439 shares.

(3) Common stock, consisting of 1,200 shares of Class A, no par value, and 300 shares of Class B, no par value. Each share of the Class B common stock was entitled to share equally with each share of Class A common stock in earnings and preemptive rights to purchase additional stock

and in distribution of assets, the only difference being that Class A common stock had voting rights, whereas Class B common stock had no voting rights. Of the Class A common stock, the Container Corporation of America and W. P. Hicks each held 600 shares. W. P. Hicks also held 50 per cent. of the Class B common stock.

The second amended plan of reorganization proposed that the capital stock be changed to 27,000 shares, consisting of 2,000 shares of prior preferred, par value $100 per share, and 25,000 shares of common stock, par value $1 per share. The dividend rate on the prior preferred stock was to be reduced from 7 per cent. to 5 per cent.; the holders to be entitled to full voting rights, share for share, with the holders of other voting stock, but only while the company was in arrears on dividends on such stock or while the net current assets of the company were less than 50 per cent. of the amount of the par value of the outstanding prior preferred stock. Further, the holders of this stock were to have the right to vote for and elect one member of the board. Among other conditions, it was proposed that no dividends should be paid on the common stock, except after payment of all current and accumulated dividends on the prior preferred stock and unless a certain amount of prior preferred stock had been retired. This new common stock was to be distributed 2,000 shares pro rata to the prior preferred stockholders, and 3,000 shares to the Container Corporation in consideration of the cancellation of its note for $22,000. The remaining 20,000 shares were to be distributed among the preferred, Class A and Class B common stockholders in lieu of their holdings. The proposed plan further provided that the $22,000 due to the Waldheim Realty and Investment Company was to be paid in cash.

The appellant contends in support of his application for fees that the value of the services rendered in connection with the reorganization proceedings was in excess of $5,000, and that a fair allocation of that sum as between his client and the debtor would be an allowance by the court of the sum of $2,500 to be paid by the debtor. He contends that a very substantial part of his services was beneficial to the debtor, rather than to his client as an individual, and that to the extent that his services redounded to the benefit of the debtor, it is his position that he should be compensated. A hearing was had before the court and an order was filed denying the application, the court stating in part:

"We are not unmindful of the intelligent and effective service rendered by this applicant. He was retained to represent a client. He discharged that obligation. The interest of that client dominated applicant's efforts in the reorganization proceeding. That interest prompted applicant in the early stages of this case to take the position that a reorganization was unnecessary and ill-advised. The several plans presented were examined in the light of his client's position, and his opposition withdrawn when it was conceived that this client had been protected.

"The applicant's position is no different from that of counsel for any other stockholder or creditor in a reorganization proceeding. If the obligation is upon the debtor in one case, it is upon it in all."

Section 77B (c) (9) of the Bankruptcy Act (11 U.S.C.A. § 207 (c) (9) provides: "The judge * * * may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing."

It is clear that the provisions of this act contemplate the exercise of the sound discretion of the court as to the amounts and the parties to whom compensation should be allowed. It is well recognized that it is difficult to propound a satisfactory rule or principle that should guide or govern the court in all cases and under all circumstances. While the general language employed in the act may occasion the belief that the doors were thrown wide open by Congress and a general invitation extended to all who may have participated in any way in a reorganization proceeding to receive allowance for services rendered, it is obvious that such a construction would tend to defeat the very purpose for which the reorganization act was created. Congress necessarily relied upon the court to exercise its sound judgment and to limit the allowances to those who may have rendered services that contributed and aided in the solution of the problems which confronted the company and in the achievement of rehabilitation under the act. We

do not understand that appellant has any quarrel with the principles above stated, but he earnestly urges that, while he represented primarily a large stockholder whose interest represented an investment of approximately $50,000, the reorganization was largely one of capital stock adjustment, and when the various stockholding interests were reconciled, the reorganization as outlined in the second amended plan resulted. He contends that the objective sought to be obtained was a reapportionment of the stock interests; that his efforts aided in the defeat of the first plan which was disapproved by the court; that throughout the entire proceedings he contributed his services in bringing about harmony among the conflicting interests; and that his efforts contributed directly and to a material degree in effecting the submission and adoption of the final plan.

A consideration of the entire record convinces us that appellant's efforts were directed primarily to the protection of his client's interests. In his view, the first plan adversely affected the rights of his client as a holder of a large interest in the preferred and common stock. The same reasons prompted him to object to the amended plan. It is entirely probable that appellant's services in the protection and safeguarding of his client's interests contributed to some degree in a reconciliation of the conflicting stock interests and the achievement of harmony. The trial court, however, concluded that his position was no different from that of any other creditor or stockholder who may have been affected by the proposed reorganization and desired to participate so as to safeguard and promote the individual interests involved.

It is important to bear in mind that the statute does not require the payment of compensation to every one whose efforts may redound to the benefit of the reorganized company. The court in Re A. Herz, Inc. (C.C.A.7) 81 F.(2d) 511, 513, used the following language in discussing the meaning of section 77B (c) (9): "The statute defines the groups that *may* be compensated, but this in no sense is to be construed as meaning *shall* be compensated. It is not every service that may in some remote degree contribute to the general welfare of the proceeding that the court is bound to compensate under this section of the statute. If it were, the very purpose of the statute would in many cases be frustrated. Every case must stand upon its own bottom and is subject to the exercise of a sound judicial discretion by the trial court, subject to review in the event of abuse."

The statute did not contemplate that the burden of paying for all personal services should be transferred from individual clients to the debtor company. The principle that a client should pay his attorney for services rendered applies in proceedings under section 77B as well as in other fields of litigation. It is reasonable to presume that Congress was concerned primarily in giving the court authority to make allowance for the services of the representatives of groups, rather than the representatives of individuals. However, we do not desire to be understood that under no circumstances should a representative of an individual stockholder or creditor be allowed compensation under the act for services which were beneficial to the estate. Each situation must be determined on its own facts and circumstances. Neither do we determine that an allowance to the appellant by the trial court under the circumstances herein would have been improper or outside the scope and spirit of the act. The judgment of the trial court should not be disturbed, however, unless there has been a palpable abuse of discretion and its action without support in the record. It is the trial court that exercises discretion, not this court, and even though in the exercise of our discretion we might have arrived at a different conclusion from that evidenced by the trial court in its order, that would not justify a substitution of our judgment for that which was exercised by the trial court.

"A very broad discretion is lodged in the chancellor in the allowance and fixing of fees and he must ever be alert lest a reorganization inure to the benefit, not of the distressed debtor and its creditors, but only to those engaged in saving it. The discretion thus lodged by statute in the court must be exercised with judgment and with the double purpose of doing equity to those distressed and at the same time rewarding faithful and necessary service with reasonable compensation." In re A. Herz, Inc., supra.

On the other hand, the action of the trial court in allowing or denying applications for allowance of fees for services rendered in any proceeding is not absolute. It may not allow or deny administration claims without any support for

its conclusions; but we do recognize that with the entire proceeding pending before it, the character of the services rendered, the benefits which inure to the estate, whether incidental, fortuitous, or direct, slight or great, are matters with which it is peculiarly cognizant. It will be noted that, while the trial court found that appellant had rendered intelligent and effective service, there is no finding that any service rendered by the appellant conduced to the direct benefit of the estate. The trial court undoubtedly recognized that the appellant was not interested primarily in the reorganization. The achievement of reorganization was not the motivating factor that prompted appellant to participate in the proceeding. His principal concern was the protection of his client's individual interest and to prevent any action that would disproportionately or inequitably reduce his holdings.

If appellant's position is to be sustained, the court would be bound to recognize the right for compensation of every creditor or stockholder who may have interested himself in a reorganization proceeding, and who can demonstrate that some portion of the services rendered redound to the benefit of the estate. Each counsel for individual interested parties could file objections to plans that were filed, cross-examine witnesses, produce testimony, suggest amendments, and generally identify himself with the proceeding so as to make a showing that some part of the efforts expended was of value to the debtor. If the courts had no control over the individual or groups that should have a right to look to the debtor for remuneration for services expended in connection with reorganization proceedings, the duplication of effort would be tremendous, the administration expense prohibitive, and the purpose of the act frustrated. Such a result serves to emphasize the necessity of lodging with the trial court the responsibility of exercising his sound judgment in the allowance of administration claims, and where, as in the instant case, the line of demarcation may be close between services for which the client should compensate and those which may be properly charged to the estate under section 77B (c) (9), this court will refuse to interfere with the apparent careful consideration of the trial court.

We find that the evidence fairly sustains the views as expressed in the trial court's order in denying the appellant's claim for compensation, and the order of the said court is therefore affirmed.