STARK et al. v. WOODS BROS. CORPORATION et al.

In re WOODS BROS. CORPORATION.
No. 11560.

Circuit Court of Appeals, Eighth Circuit.
Feb. 28, 1940.

Glen A. Lloyd, of Chicago, Ill., and Don W. Stewart, of Lincoln, Neb. (William G. Burns, of Chicago, Ill., on the brief), for appellants.

William I. Aitken, of Lincoln, Neb. (Woods, Aitken & Aitken, of Lincoln, Neb., on the brief), for appellees.

C. Edward Dahlin, of Chicago, Ill., for First Nat. Bank of Chicago.

Before GARDNER and WOODROUGH, Circuit Judges, and MOORE, District Judge.

GARDNER, Circuit Judge.

This appeal challenges the reasonableness of an order making allowances for attorney fees and expenses in a corporate reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

The debtor, Wood Brothers. Corporation, is a holding corporation owning miscellaneous securities and stock in six subsidiaries, one of which was a construction company, four owning farms, ranches and city real estate, and one owning various securities. These subsidiaries were not included in the reorganization. On June 30, 1937, the assets of the debtor and its subsidiaries had a total book value of $6,095,-373.85. The actual value of the assets was something less than $3,000,000. In 1932, the debtor was indebted to various banks in the total amount of $1,635,000, and was indebted on its outstanding ten-year collateral trust sinking fund gold bonds in the principal amount of $1,706,500. The bank indebtedness was evidenced by the debtor's demand promissory notes, which were secured by pledge of approximately $3,500,000 principal amount of the demand promissory notes of three of the debtor's subsidiaries. The bonds were secured by pledge of the stock of the debtor's wholly owned subsidiaries.

The debtor was seriously involved financially in 1932 and defaulted in its bond sinking fund payment. After default, the bank creditors received $884,000 on account of their claims, prior to the adoption of a plan of reorganization.

In 1933, what is referred to in the record as the first bondholders' reorganization committee was formed in Chicago. Messrs. Fisher, Boyden, Bell, Boyd and Marshall were counsel for this committee. It prepared and filed a committee agreement, prepared a registration statement and exhibits, which were filed with the Securities Exchange Commission at Washington, D. C., under the Federal Securities Act, 15 U.S.C.A. § 77a et seq., prepared and mailed prospectuses, bond deposit agreements, and letters to the bondholders, filed amendments to its registration statement, and conferred as a committee and with counsel and others in connection with its organization and its activities. This committee received less than $60,000 of face value of bonds, and dissolved in July of 1936. Edwin M. Stark, of Chicago, one of the appellants here, was chairman of that committee. A second bondholders' committee was formed in March of 1934, with A. Perry Osborn, of New York, as chairman. This committee went through substantially the same steps as the first committee, except that it did not solicit the deposit of bonds or prepare deposit agreements. It also disbanded and dissolved in the summer of 1936. Messrs. Osborn, Fleming and Whittlesey, of New York City, were counsel for the second committee. A third bondholders' committee was organized in August, 1936, and will be referred to as the reorganization committee. Edwin M. Stark was chairman of the committee, and Messrs. Bell, Boyd and Marshall, successors to Messrs. Fisher, Boyden, Bell, Boyd and Marshall, who were attorneys for the first committee, were its counsel. This committee went through the same steps as had been taken by the first and second committees.

In April, 1937, proceedings were pending on an involuntary petition for reorganization which had been filed in June, 1935, by three bondholders. Reorganization was opposed by the bank creditors. On April 26, 1937, the reorganization committee intervened in the proceedings and were instrumental in obtaining an order restraining the debtor from making further payment on account of the bank debts. The bank creditors contended that their claim against the three subsidiaries whose notes were pledged with the bank, were prior to the claims of the bondholders. After some negotiation, the reorganization committee and the bank creditors agreed upon a basis for reorganization. The management of the debtor supported the banks in their claim to the collateral and their right to preferential payments, and until January 3, 1938, opposed reorganization on a basis acceptable to the bondholders. On that date the trustee for bondholders, at the request of the reorganization committee, initiated action to vote the pledged stock of the subsidiaries for the election of directors who would represent the creditors. Following this strategic move, the debtor agreed with the reorganization committee and the bank creditors upon the basis of a plan. When this agreement was made on January 20, 1938, the debtor filed its voluntary petition for reorganization in the proceedings then pending on the involuntary petition.

The reorganization committee submitted the plan to bondholders, solicited acceptance of it by bondholders, formally proposed the plan in reorganization proceedings, filed written acceptances of the plan in behalf of the holders of approximately 63% of the principal amount of the bonds, and as the proponent of the plan carried the burden of establishing its fairness and feasibility. The plan proposed was modified in certain respects found immaterial by the District Court, and as so modified was confirmed and adopted on November 5, 1938. Under the plan, Edwin M. Stark was designated reorganization manager and had general supervision of the work required to put the plan into operation. The plan was substantially carried out by January 27, 1939, at which time the new securities were made available for distribution.

The claims principally affected by the plan were as follows:

### Creditors

| | |
|---|---|
| Collateral trust bonds | $2,332,883.46 |
| Indebtedness to banks | 791,089.59 |
| General claims | 35,081.14 |
| Total Claims | $3,159,054.19 |

### Stockholders

| | |
|---|---|
| 50,000 shares of 7% cumulative preferred stock, par value | $5,000,000.00 |
| 10,283¼ shares of 6% cumulative preferred stock—total par value | 1,028,325.00 |
| Total | $6,028,325.00 |

183,628.95 shares common stock no par value.

These interests, under the plan adopted, were disposed of as follows: A new company, the Lancaster Corporation, was organized, and there was transferred to it all property of the debtor and its wholly owned subsidiaries, except two, of whose stock it became the sole owner. The bondholders and bank creditors received bonds of the new company. The bondholders also received a substantial cash distribution to offset the prior preferential payments to the bank creditors. The preferred stockholders and general creditors received voting trust certificates evidencing common stock of the new company. The old common stockholders of the debtor were eliminated.

Upon completion of the plan, the funded indebtedness and capitalization were as follows:

Ten Year 3½% Collateral
Trust Sinking Fund Bonds
  due January 1, 1949
Series A-issued to bondholders .................... $1,706,500.00
Series B-issued to bank creditors .................... 710,000.00
    Total ................. $2,416,500.00
Capital Stock, no par value 61,690¼ Shares

Book net worth of the Lancaster Corporation after reorganization was $235,495.55.

The District Court allowed $59,745.78 to all claimants for attorney fees and expenses. The total amount claimed was more than $200,000. During the proceedings the debtor expended for printing, mailing and postage, in connection with the plan, $9,586, so that the total expense of reorganization was $69,331.78.

As of June 30, 1937, debts of the debtor and its subsidiaries were $3,496,528.66, and contingent liabilities were $267,500. Upon completion of the plan, debts were $2,653,592.25. Interest charges were reduced by $48,448.50 per year. Claims totalling approximately $200,000 were disallowed in the reorganization proceedings. The management has been placed under control of the creditors.

The appeals are from four allowances. The reorganization committee requested an allowance of $22,500 for services and $16,012.67 for expenses. The court allowed this committee $7,500 as compensation and $8,341.90 for expenses. The reorganization manager requested an allowance of $5,000 for services and $998.40 for expenses. The court allowed him $1,500 as compensation and $248.40 for expenses. Messrs. Bell, Boyd and Marshall, as attorneys for the reorganization committee and the first committee, requested an allowance of $37,500. The court allowed them as compensation the sum of $12,000.

In April, 1937, the reorganization committee employed as local counsel in Lincoln, Nebraska, Messrs. Stewart, Stewart and Whitworth. They requested an allowance of $9,200 as compensation and were allowed $2,500 by the court.

Without challenging in any way the court's findings of fact, these claimants have appealed from the order of allowance, contending that the allowances are inadequate.

In determining the question presented to the lower court, it was necessary to consider (1) what services should be compensated for; and (2) what allowance should reasonably be made for such services.

The services or expenses which will warrant an allowance from the estate under Section 77B must have contributed to the plan as finally adopted. Compensation for service rendered in matters collateral to or indirectly affecting the proceedings should not be allowed. Every case must stand upon its own peculiar facts and much must depend upon the exercise of a sound judicial discretion by the trial court. Teasdale v. Sefton Natl. Fibre Can Co., 8 Cir., 85 F.2d 379, 107 A.L.R. 531; West v. Fradenburg, Webb, Beber, Klutznick & Kelley, 8 Cir., 86 F.2d 318. The work of the first committee was not so connected with the plan of reorganization as finally adopted as to make it obligatory upon the court to allow for expenses incurred by it. There is evidence of duplication of work by local and general attorneys and in their respective offices. Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 505. Much of the work of the first committee was valueless. Substantial amounts are claimed by Stark for expenses of that committee, and the reorganization committee requested that the work and employment of the first committee be taken into account in fixing compensation for the reorganization committee. Appellants, in their brief, say: "The theory upon which this request was made was that the reorganization committee in effect was a continuation of the

first Chicago committee and received the benefits of the latter's efforts."

The court, however, was not required to accept that view. It had to consider practical questions. As said by this court in Silver v. Scullin Steel Co., supra:

"Compensation should be allowed out of the debtor's estate only for substantial and meritorious services rendered in the advancement of the reorganization proceedings and for the benefit of the estate. * * *

"No stockholder or creditor, or group of stockholders or creditors, can retain counsel and bind the court to pay such counsel the full value of the services rendered under such retainer out of the estate of the debtor. The determination of what part of the services rendered by counsel employed by stockholders or creditors may, with propriety, be charged to the trust estate is primarily for the determination of the court of bankruptcy, and, unless its determination of that question is obviously wrong, it will not be disturbed upon appeal."

Attorneys for interested groups in corporate reorganizations are not as a matter of right entitled to have the full value of their services paid by the debtor. The court has the power to determine within reasonable limits, what that compensation should be. Claims for services and expenses of the reorganization committee and manager were carefully considered by the trial court. How much should be allowed Stark for office overhead and assistance of employees was for that court to determine. Stark had other duties, and the part his office and employees played in the debtor's reorganization was a matter submitted for decision to the trial court.

It is the duty of courts to protect estates confided to their supervision from "vicarious generosity" in the matter of attorney fees. In re Gilbert, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580; Federal Oil Marketing Corp. v. Cravens, 8 Cir., 46 F.2d 938; Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940; Blackhurst v. Johnson, 8 Cir., 72 F.2d 644.

This statute deals with the affairs of a corporation in financial distress, and proceedings under 77B should, consistent with the policy of Congress, be economically administered. Callaghan v. Recon-struction Finance Corp., 297 U.S. 464, 56 S. Ct. 519, 80 L.Ed. 804. This policy is not limited to the allowance of attorney fees, but applies to all claims presented for services or expenses in connection with the administration. This duty was emphasized in construing a statute pertaining to fees of referees by Mr. Justice Cardozo in Realty Associates Securities Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446. In Callaghan v. Reconstruction Finance Corporation, supra, in an opinion by Mr. Justice Stone, it is said inter alia [297 U.S. 464, 56 S.Ct. 521, 80 L.Ed. 804]:

"It has been the consistent policy of Congress that proceedings in bankruptcy and under section 77B be economically administered. * * *

"One of the controlling reasons for the enactment of section 77B was the desire to reduce the costs of reorganization."

Appellants refer to the magnitude of the interests involved. The debtor was a corporation with assets of about $3,000,000 and liabilities approximating that amount. The relation between debts and assets remained substantially the same. Common stockholders, to be sure, had been eliminated but their holdings were valueless. Bondholders and bank creditors now have sinking fund bonds, while general creditors and preferred stockholders have voting trust certificates evidencing the common stock of the new company. Whether substantial improvement has been made in the financial condition of the debtor from a practical standpoint is more or less conjectural. The corporate structure survives, but its original problems of working capital remain. A very substantial fractional part of the net working capital of the corporation is to be used for the payment of reorganization expenses. To burden it with more would overlook the purpose or policy of the act.

As to attorney fees, the trial court not only heard all the testimony in support of appellants' claims, but the proceedings were under his supervision and he had intimate and thorough knowledge of their necessity and value. In this case, there is no doubt of the high standing of counsel, nor of the good faith and effectiveness of their efforts. But on appeal the question is whether the lower court abused its judicial discretion in making the allowances, to the extent that it can be said that it ignored the factors which it

974

should have considered, or reached a result in manifest disregard of right and reason. Committees and counsel in such proceedings act with full knowledge of the rules of law applicable. They act in a quasi public capacity, and can not as a matter of right demand compensation at the rate which similar services command in purely private employment. In re Standard Gas & Electric Company, 3 Cir., 106 F.2d 215.

The trial court seems to have considered every element and phase of this case with searching scrutiny and meticulous care. No abuse of judicial discretion appearing, the order appealed from is affirmed.