**In re MT. FOREST FUR FARMS OF AMERICA, Inc.**

**VERMILION BAY LAND CO. v. FITZGERALD et al., and ten other cases.**

**Nos. 10160 to 10170.**

Circuit Court of Appeals, Sixth Circuit.

Oct. 9, 1946.

---

MILLER, Circuit Judge, dissenting in part.

Lester S. Moll, of Detroit, Mich. (Moll, Desenberg & Purdy, of Detroit, Mich., on the brief), for Vermilion Bay Land Co.

Noble Lawson, of Detroit, Mich. (Anderson, Wilcox, Lacy & Lawson, of Detroit, Mich., on the brief), for John S. Anderson et al.

Harold M. Shapero, of Detroit, Mich., for Harold M. Shapero et al.

Edward T. Kelley, of Detroit, Mich. (Frederick B. Darden, of Detroit, Mich., on the brief), for Darden & Brashear et al.

Edward T. Kelley, of Detroit, Mich., for Edward T. Kelley et al.

Julian G. McIntosh, of Detroit, Mich., per se.

Richard Ford, of Detroit, Mich. (Fischer, Brown, Sprague, Franklin & Ford, of Detroit, Mich., on the brief), for Harley C. Waitman et al.

Harold R. Smith, of Detroit, Mich., for Ernest D. Skinner et al.

Harley G. Fowler, of Knoxville, Tenn. (Fowler & Fowler, of Knoxville, Tenn., on the brief), for J. A. Fowler et al.

Hugh Francis, of Detroit, Mich., for Hugh Francis, receiver.

Ross Shumaker, of Toledo, Ohio (Fraser, Shumaker, Kendrick & Winn and Robert S. Dunn, all of Toledo, Ohio, on the brief), for Fraser, Shumaker, Kendrick & Winn.

Robert S. Marx, of Cincinnati, Ohio (Carl Runge and Lawrence I. Levi, both of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for Frank Fitzgerald et al.

Charles J. Odenweller, Jr., of Cleveland, Ohio (Roger S. Foster, Theodore L. Thau, and W. Victor Rodin, all of Philadelphia, Pa., on the brief), for Securities and Exchange Commission.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The tangled trail through the Mt. Forest Fur Farms of America has led again to this court. We have previously published three opinions upon jurisdictional phases of the attempt to reorganize the distressed debtor corporation, and to bring in as assets its asserted valuable mineral rights in Louisiana lands. A part of the case history is revealed in these opinions: Mount Forest Fur Farms of America v. Farnsworth, 6 Cir., 92 F.2d 342; In re Mt. Forest Fur Farms of America, 6 Cir., 103 F.2d 69; In re Mt. Forest Fur Farms of America, 6 Cir., 122 F.2d 232. A more complete history, which brings the chronicle to date in clear-cut narrative form, will be found in findings numbered two to fifteen, inclusive, at pages 63–68, of the findings of fact and conclusions of law of the district court in the present controversy which are published in 62 F.Supp. 59. For brevity, the excellent narrative of the district judge will not be repeated or rewritten. All his findings are grounded upon substantial evidence and certainly cannot be said to be clearly erroneous.

A plan of reorganization has been confirmed by the district court. We are now asked by numerous claimants to reverse the disallowance of fees and expenses claimed in their individual cases. The Securities and Exchange Commission, which became a party to the reorganization proceeding, contends that the rejected fee claims of certain attorneys should be allowed because the services rendered were as a matter of law compensable from the assets of the debtor. The reorganized debtor, Vermilion Bay Land Company, invokes a reduction of the fee allowances to the trustee, his general counsel and his special counsel, and to the attorneys for the debtor corporation; and resists the fee claims of the various appellants.

The eleven separate appeals from the respective orders of allowance and disallowance entered in the district court were consolidated. A full day's court session was consumed in hearing the arguments of thirteen attorneys who appeared for the respective parties in interest. Fifteen printed briefs have been read and the authorities cited have been consulted.

There is no printed record in the cases; but the appeals have been submitted upon one set of typewritten material consisting of numerous volumes containing miscellaneous matter, such as copies of pleadings and motions; testimony taken before the special master, and also before the district judge; claims; schedules of objections; corporate minutes and minutes of the meetings of the reorganization committee; copies of miscellaneous letters, papers, documents and financial statements; and copies of briefs and of various orders entered from time to time in the proceedings below. Printed records and briefs in other litigation in connection with the affairs of the Mt. Forest Fur Farms of America, Inc., have been included also. This single set of miscellaneous material submitted in lieu of a printed record weighed 54 pounds when shipped by express in two 10½′ X 17¼′ X 11½′ cardboard containers.

Even though the court has been burdened with checking and considering this type of material, in lieu of a printed record, the economy of counsel in avoiding the heavy cost of printing such voluminous material is commended. A display of like economy-mindedness in the claims for fee allowances would have been even more commendable. Had all the petitions for fee claims been allowed as presented, the total amount would have aggregated $319,235.54, plus reimbursement of $8,407.10 in claimed expenses. Fees and expenses uncontested by appeal in the amount of $185,339.45 in connection with the mineral litigation had already been allowed and paid, and claims for fee allowances arising from the state court receivership had been compromised for more than $55,000, at the expense of the debtor corporation, when the present claims were considered in the district court. Thus, the total cost in fees and expenses of reorganizing the debtor corporation would have substantially exceeded one half million dollars, had all claims for fees and expenses been allowed.

As found by the district court, the debtor corporation had on hand, at the time of action upon the final fee claims, $125,000 in cash, was receiving an annual income of approximately $80,000 from oil, sulphur, and muskrat trapping royalties, and owned some 50,000 acres of cheaply purchased land of doubtful value in Louisiana. In the plan of reorganization, the trustee stated his "considered opinion" that the debtor's assets were worth, conservatively, not less than $1,500,000. This amount, however, is essentially speculative, inasmuch as the record does not reveal with any degree approaching certainty the reasonable value of future royalties. The debtor insists that the trustee's estimated value of its contingent assets is entirely too high. There would seem to be justification for the argument. Even accepting the trustee's estimated valuation, however, a total allowance of more than one-third of the debtor's assets in expenses of administration and reorganization would be unconscionably high.

Many years ago, Chief Justice Taft sounded a note of economy in expressing the desire of the Supreme Court that judges, in fixing allowances for the services of court officers, "should be most careful"; and that "vicarious generosity" in such function should "receive no countenance." In re Gilbert, 276 U.S. 294, 296, 48 S.Ct. 309, 310, 72 L.Ed. 580.

In 1935, the present opinion writer, as district judge, pointed out that the policy of the Bankruptcy Act, manifest in all its provisions regarding expenses and fees, is to reduce to a minimum the cost of administering estates, and that the courts are bound to give the statute such construction and application as will fulfill the intention of Congress. In re King, D.C.W.D.Tenn., 11 F.Supp. 351, 357. Among other authorities, reference was made to the opinion of Mr. Justice Cardozo in Realty Associates Corporation v. O'Connor, 295 U.S. 295, 299, 55 S.Ct. 663, 79 L.Ed. 1446, where he declared for the unanimous court that extravagant costs of administration in winding up estates in bankruptcy have been denounced as crying evils; that, in response to those complaints, Congress had attempted to fix the limit for expenses growing out of the services of referees and receivers; and that a court should not forget that Congress meant to hit the evil of extravagance, wherefore the meaning of the words of the Bankruptcy Act, if doubtful, must be adapted to its aims.

In 1936, Mr. Justice Stone (later Chief Justice), in delivering the again unanimous opinion of the highest court, cited his colleague's earlier decision and declared that it had been the consistent policy of Congress that proceedings in bankruptcy and under Section 77B, 11 U.S.C.A. § 207, should be economically administered; that one of the controlling reasons for the enactment of Section 77B was the desire to reduce the costs of reorganization; and that limitations upon prescribed expenses have been strictly construed "even when the compensation allowed was, in special circumstances, materially less than that which otherwise might have been considered reasonable." Callaghan v. Reconstruction Finance Corporation, 297 U.S. 464, 468, 469, 56 S.Ct. 519, 521, 80 L.Ed. 804.

Certainly, these two opinions made crystal clear the Supreme Court's de-

nouncement of the allowance of excessive or exorbitant compensation in proceedings for the conservation and preservation of the estate of the bankrupt and the interest of creditors.

More recently, the Supreme Court has stated that "the history of fees in corporate reorganization contains many sordid chapters", and that "one of the purposes of § 77B was to place those fees under more effective control." Dickinson Industrial Site v. Cowan, 309 U.S. 382, 388, 60 S.Ct. 595, 599, 84 L.Ed. 819. "And Ch. X of the Chandler Act which took the place of § 77B set up even more comprehensive supervision over compensation and allowances (H.Rep.No. 1409, 75th Cong. 1st Sess., pp. 45–46) and provided a centralized control over all administrative expenses, of which lawyers' fees are a part", said the highest court in Brown v. Gerdes, 321 U.S. 178, 181, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659. It was there observed that recognition had been given to the effect which a depletion of cash resources of the debtor's estate may have on both the fairness and the feasibility of a plan of reorganization.

When a distressed debtor voluntarily or involuntarily limps into a federal court of equity in a reorganization proceeding, he leans upon the court as upon a crutch.

Unhappily, more lip service than decisive application has been given the accepted principle that burdensome fees and expenses must be avoided in reorganization proceedings. As has been well said by Judge Augustus N. Hand: "The Supreme Court has given notice on more than one occasion that receivers and attorneys engaged in the administration of estates in the courts of the United States and in litigations affecting property within the jurisdiction of those courts should be awarded only moderate compensation, and that many of the allowances heretofore awarded have been too high. * * * These declarations of policy by a tribunal which is controlling upon the lower courts must be kept constantly in mind in dealing with judicial allowances—a subject difficult and unsatisfactory because of lack of any definite standards." In re New York Investors, 2 Cir., 79 F.2d 182, 185. The opinion of Mr. Justice Cardozo, to which reference has been made, was cited. See also In re New York Investors, 2 Cir., 130 F.2d 90.

In another case, Judge Hand again pointed to the danger of numerous and extravagant allowances, saying that "most large estates are beseiged by persons claiming to have played some part in liquidating or rehabilitating them"; and that, if duplication of work and compensation were not prevented, the administration of such estates "will be haphazard and largely dependent on the sporadic notions of the particular judge in charge as to what may vaguely be regarded as equitable." In re Paramount Publix Corporation, 2 Cir., 85 F.2d 588, 589, 591.

Writing an opinion of affirmance of a district court order dismissing a petition for allowance of attorneys' fees out of funds in the hands of receivers, Justice Rutledge (now an Associate Justice of the Supreme Court) said: "Allowance of attorneys' and receivers' fees in receivership proceedings has been the subject of sharp criticism. The courts have gone far in allowing such fees when those who received them are parties or attorneys for parties in the litigation. Even so, they have refused to make such awards to mere volunteers." Thomas v. Peyser, 73 App.D.C. 155, 118 F.2d 369, 372. The evils of extravagant fees and costs cry as loudly now as was true when the Supreme Court, through Mr. Justice Cardozo, pronounced its admonition eleven years ago.

Many heavy fee and expense burdens which have been imposed upon distressed debtors in reorganization seem to have stemmed from actual construction of the word "may" as if Congress had used the word "must" in 77B, sub. c(9) of the Bankruptcy Act, 11 U.S.C.A. § 207, sub. c(9), relating to reasonable compensation for services rendered and expenses incurred in connection with the consummation of a plan of reorganization. As asserted by the Court of Appeals for the Eighth Circuit in Teasdale v. Sefton Nat. Fibre Can Co., 85 F.2d 379, 382, 107 A.L.R. 531: "It is important to bear in mind that the statute

does not require the payment of compensation to everyone whose efforts may redound to the benefit of the reorganized company." See also In re A. Herz, Inc., 7 Cir., 81 F.2d 511, 513; Newman v. Ambassador Apartments, Inc., 3 Cir., 101 F.2d 307, 308; Milbank, Tweed & Hope v. McCue, 4 Cir., 111 F.2d 100, 101; In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215, 216; Stark v. Wood Bros. Corporation, 8 Cir., 109 F.2d 969; Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 505.

There is no reasonable basis in the legislative history of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., for an inference that Congress intended to impose, by net balance, additional fee and expense burdens upon a harassed debtor in reorganization by the inclusion of Section 243, U.S.C.A., Title 11, § 643,[1] upon which so much stress has been placed. It is true, as argued in the brief for the Securities and Exchange Commission, that there was a design to encourage active participation of minority groups and individual creditors and stockholders in the formulation of a plan of reorganization; and, so *the judge was vested with discretion* to allow reasonable compensation for services rendered and reimbursement for costs and expenses incurred by creditors and stockholders and their attorneys to the end of achieving either the confirmation or the rejection of a plan submitted to the court. Beneficial contributions to the administration of the estate were also to be recognized by fee allowances within the discretion of the judge. During the hearings before the House Judiciary Committee,[2] it was stated by Mr. Justice Douglas (then a member of the Securities and Exchange Commission): "Compensation and expenses should not be reserved for the inside few, who in spite of a show of prodigious effort are too frequently serving objectives which are not compatible with the interests of investors. To allow the standard of compensation to remain as it is, is to put a premium upon domination of the proceedings by the management and the investment bankers."

In contending, in the instant case, that the base of fee allowances should be broadened to include certain attorneys, whose services are considered by the Commission to have contributed to the plan within the meaning of Section 243, its attorneys cite In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599, 601. We do not find that this authority supports their contention. There, the appellate court affirmed a fee and expense allowance of $750 *to the attorney for the debtor* and rejected the rest of his claim of $14,500 for services and $260.27 for disbursements. It was pointed out that Section 242 of the Act authorizing compensation to indenture trustees, committees, and other parties in interest cannot be supposed to require that the estate of the debtor is to pay for unnecessary services; and that the specification in Section 243 that services should not be compensated from the estate, unless beneficial to it, "cannot be deemed to have repealed by implication the restrictions which the courts had already established for other classes of claimants." The Court of Appeals for the Second Circuit stated: "This court has held both under the old Bankruptcy Act and under section 77B that a volunteer, even if his services have benefited the estate cannot be compensated out of the estate for services which should have been performed by the trustee or his attorney, unless the volunteer is authorized by the court in advance of rendering the

1 "The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto. July 1, 1898, c. 541, § 243, as added June 22, 1938, c. 575, § 1, 52 Stat. 900." U.S.C.A., Title 11, § 643.

2 Hearings before House Judiciary Committee on H.R. 6439 (amended and reported as H.R. 8046), 75 Cong. 1st Sess. (1937) 186.

service. See Sartorious v. Bardo, 2 Cir., 95 F.2d 387, 390, which cites the earlier authorities. There is no reason for a different rule under chapter X. For services pertaining to administration, since trustees were appointed and had their own attorney, the appellant must be regarded as a volunteer." [117 F.2d at page 602.] In our judgment, the position of the Securities and Exchange Commission is not supported by Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890, or by any other cases cited in its brief.

From recognition that one of the purposes of old Section 77B and of Chapter X of the Chandler Act was to correct fee abuses in corporate reorganization, it has been held that a corporate debtor for whom trustees were appointed could not, without leave of court first obtained, bind the estate to pay for services of a lawyer, expert in corporate reorganization, even though retained in good faith by the debtor to formulate a plan of reorganization and to endeavor to obtain its confirmation. In re General Carpet Corporation, 3 Cir., 116 F.2d 426. Cf. In re Postal Telegraph & Cable Corporation, 2 Cir., 119 F.2d 861.

This court said, in Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 142 F.2d 991, 995: "It is the duty of the court in administering the bankruptcy law to avoid double expense to the estate and before there can be an allowance to an attorney acting for the subsidiary debtor, the burden rests on the applicant for fees to show (1) that his services benefited the estate, (2) that the trustee or debtor in possession refused to act and (3) that formal authorization was procured from the court to proceed in the name of the trustee or the debtor in possession."

The practical advice has been given that a court should *first* ascertain the maximum amount allowable for the administration of the estate or the reorganization of the debtor, and *next* should ascertain how much each counsel should receive by measuring the value of his services and their benefit to the estate, bearing in mind that it is difficult to see how an estate could be benefited by repetitious legal services. See In re Irving-Austin Bldg. Corporation, 7 Cir., 100 F.2d 574, 577, 579, 580, where it was said that "in bankruptcy proceedings there is danger of chasing rainbows, of pursuing collateral issues and following false leads that are productive of much delay, great expense, large fees to trustee and counsel, but nothing for the estate." Compare discussion at page 252 of the opinion of the same court, In re Watco Corporation, 7 Cir., 95 F.2d 249.

It has been emphasized that committees and counsel in reorganization proceedings act with full knowledge of the rules of law applicable and in a quasi public capacity, and cannot as a matter of right demand compensation at the rate which similar services command in purely private employment. Stark v. Woods Bros. Corporation, 8 Cir., 109 F.2d 969, 973, 974. See also In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215.

It is definitely settled that appeals from all orders allowing or disallowing compensation or reimbursement under Chapter X of the Chandler Act may be had *only* in the discretion of the Circuit Court of Appeals. Unlike appeals from other orders, appeals from compensation orders normally involve only one question of law: abuse of discretion. As spoken by the highest authority: "Fee claimants are either officers of the court or fiduciaries, such as members of committees, whose claims for allowance from the estate are based only on service rendered to and benefits received by the estate. Allowance or disallowance involves an exercise of sound discretion by the court based on that statutory standard." Dickinson Industrial Site v. Cowan, 309 U.S. 382, 385, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819. In all cases persons who seek compensation for services or reimbursement for expenses are held to fiduciary standards. Brown v. Gerdes, 321 U.S. 178, 182, 64 S.Ct. 487, 88 L.Ed. 659. Protective committees, as well as indenture trustees and their attorneys, are fiduciaries. Woods v. City Nat. Bank Co., 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820.

Under the Act of Congress, a wide discretion is vested in the district court in the allowance or disallowance of fees, costs and expenses in reorganization proceed-

ings. The orders of the district court in such matters will not be disturbed on appeal, unless there is shown to have been a clear abuse of discretion manifesting a disregard of right and reason. Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 142 F.2d 991, 995; Teasdale v. Sefton Nat. Fibre Can Co., 8 Cir., 85 F.2d 379, 382, 107 A.L.R. 531; Stark v. Woods Bros. Corporation, 8 Cir., 109 F.2d 969, 973; Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 505, 506; Newman v. Ambassador Apartments, 3 Cir., 101 F.2d 307, 308; In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215, 216; Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 96 F.2d 219, 222; In re Seville Court Apartments Building Corporation, 7 Cir., 134 F.2d 232, 233; In re A. Herz, Inc., 7 Cir., 81 F.2d 511; Milbank, Tweed & Hope v. McCue, 4 Cir., 111 F.2d 100, 101; Davis Transformer Co. v. Mansfield, 1 Cir., 141 F.2d 681, 682.

In Sullivan & Cromwell v. Colorado Fuel & Iron Co., supra [96 F.2d 222], the Tenth Circuit Court of Appeals stated: "In the exercise of its sound discretion, the court should exert care to see that a reorganization proceeding is not diverted into a proceeding for the benefit of those claiming compensation for services rendered in connection with it to the disregard and detriment of the debtor. And where the court has exercised its judgment respecting allowances, the action should not be disturbed on appeal unless there has been a clear abuse of discretion." 96 F.2d 222.

In Newman v. Ambassador Apartments, supra [101 F.2d 308], Judge Maris thus stated the rule: "Upon appeal this court may not consider the allowance de novo or substitute our discretionary judgment as to their amount for that of the District Court. We are confined to the determination of the single question, whether the District Court abused its discretion in making the allowances appealed from to the extent that it can be said that it completely ignored the factors which it should have considered and reached a result in manifest disregard of right and reason." 101 F.2d 308.

Judge Soper of the Fourth Circuit Court of Appeals, in Milbank, Tweed & Hope v. McCue, 111 F.2d 100, 101, supra, has contributed this sound expression: "Mere participation in a reorganization proceeding does not create a right to compensation. The spirit of the Bankruptcy Act requires economy of administration and forbids the duplication of compensation for the same services rendered by different parties; and when conflicting claims are advanced, the decision of the District Judge must stand unless it is clearly erroneous."

Some of the appellants who seek reversal of the orders of the district court disallowing their claims for fee and expense allowances rest chiefly upon the authority of In re Memphis Street Ry. Co., 6 Cir., 86 F.2d 891, and the follow-up per curiam opinion in Fuller v. Memphis Street Ry. Co., 6 Cir., 110 F.2d 577.[3] These opinions are no longer authoritative, in view of the holding of the Supreme Court in Woods v. City Nat. Bank Company, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, where the basic question concerned the power of the district court in proceedings under Chapter X of the Chandler Act, 52 Stat. 840, to disallow claims for compensation and reimbursement *on the ground that the claimant was serving dual or conflicting interests.*

In the Woods case, the claimants were an indenture trustee, a bondholders' committee, and the committee's counsel, who were also counsel to the indenture trustee. The district court disallowed the claim "for want of equity". The circuit court of appeals reversed, 7 Cir., 111 F.2d 834. Certiorari was granted by the Supreme Court "in view of the importance in reorganization proceedings of the power of the District Court over such allowances." [312 U.S. 262, 61 S.Ct. 495.] The judgment of the circuit court of appeals was reversed. It was held that the court of appeals was not justified in disregarding the findings of fact of the district court amply supported by evidence

[3] The two opinions of the district court are published respectively in W.D.Tenn. July 24, 1935, 11 F.Supp. 682; and W.D. Tenn. July 20, 1939, 28 F.Supp. 358.

that the claimants represented conflicting interests in the reorganization proceeding.

The Supreme Court declared the unanimous opinion that reasonable compensation for services rendered necessarily implies loyal and disinterested service in the interest of those for whom the claimant purports to act. Mr. Justice Douglas wrote this clear-cut language:

"Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. Cf. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: 'What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases.' Weil v. Neary, 278 U.S. 160, 173, 49 S.Ct. 144, 149, 73 L.Ed. 243. Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

"Protective committees, as well as indenture trustees, are fiduciaries. [Citing authorities.] A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd.' See Mr. Justice Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1." Cf. American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 147, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860. The opinion of the Supreme Court in the Woods case was cited in Crites, Inc., v. Prudential Co., 322 U.S. 408, 418, 64 S.Ct. 1075, 88 L.Ed. 1356, in reversing a judgment of this court.

The findings of the district court will now be considered to ascertain whether the district judge clearly abused his discretion and manifested a disregard of right and reason in disallowing the fee and expense claims which were rejected, or in allowing unconscionable compensation to the trustee, his attorneys and special counsel, and to the attorneys for the debtor.

Harold M. Shapero and J. Adrian Rosenburg represented as attorneys a group of ranching contract holders, whose equitable claims were conceded but the legal enforcibility thereof was questioned by the trustee and his counsel. The ranching contracts received recognition in the plan of reorganization. The district court found that the services of these attorneys did not aid in the general administration of the estate of the debtor corporation; that their services in connection with the formulation of the plan were primarily for the benefit of their special clients; that they have a lien for their fees on the stock to be distributed to their clients, to which they should resort for their fees for services rendered. No abuse of discretion on the part of the district court appears in rejecting the claims of these attorneys.

As found by the district court, Anderson, Wilcox, Lacy & Lawson were attorneys for a stockholders' committee and, for a short time, for the debtor prior to the time this proceeding was instituted. These attorneys were instrumental in preserving the assets of the debtor which were finally acquired by the trustee when the petition for reorganization was filed. The impartial efforts of the law firm in attempting to break "the impassee" result-

ing from the state court receivership were commended; but it was found that the attorneys did not participate in this proceeding, render services in contemplation of it, or aid in the administration of the estate or in the formulation of a plan. We find no abuse of discretion in the disallowance of their fee claims.

The district court disallowed fees and expenses claimed from the assets of the debtor by Edward T. Kelley and Darden & Brashear, attorneys for a stockholders' committee since April, 1944, and fees and expenses claimed by Darden & Brashear, as attorneys for the committee prior to the retainer of Kelley as co-counsel in April, 1944. It was found that, in the initial stages of this proceeding, Darden & Brashear were counsel for the original state court receiver and attorney Kelley was associated with special counsel for the trustee; that the services of these attorneys in connection with the formulation of the plan were primarily for, and of benefit to, their special clients; and that they did not aid the general estate or its administration. There was no abuse of discretion in the rejection by the district court of the claims.

It was found by the district court that the expenditures of certain members of the so-called Westenbarger group, for which reimbursement was claimed, did not aid in the general administration of the estate of the debtor or in the formulation of a plan of reorganization. The members of this group, by virtue of a claim to ownership of 48% of the debtor corporation's stock purchased for $1,000 by John R. Westenbarger, were found to have made their expenditures "primarily to finance the activities of the attorney for the first and second successor State Court Receiver." Their chief concern pertained to the outcome of litigation respecting their stock ownership. The district court was clearly correct in denying their claims for reimbursement at the expense of the debtor corporation.

The attorney who has been most vigorous of all in protesting a fee disallowance is Harold R. Smith, whose argument that he and certain members of the so-called Westenbarger group—with which group he is identified in personal pecuniary interest—should be compensated out of the estate of the debtor is the least impressive. He requests, for himself, the immodest sum of $40,000 and reimbursement of expenses to be paid out of the estate of the debtor. As found by the district court, at the time he filed his petition for fees this attorney had appeared in this proceeding by formal intervention only one year before, though at that time the proceeding had been alive for five years. The district court expressed difficulty in reconciling his various representations; and stated that in many phases he merely duplicated the work of counsel for the trustee, and that substantially all his services were unnecessary to, in part antagonistic to and in part hampering to, the orderly administration of the complicated estate of the debtor and the formulation of a plan of reorganization. His participation in certain proceedings, other than to represent his clients and special interests, was found to be that of a volunteer. The district court found, moreover, that the attorney has a fee arrangement with various parties whom he represents and should look to them and to "the state court estate" which he represents for his compensation. His claim was properly disallowed.

Likewise, the district court held that the "second successor State Court Receiver", Hugh Francis, in whose name attorney Harold R. Smith performed a great part of the services to which reference has just been made, "for the most part was a passive onlooker in this proceeding", actually participating in it only slightly in the representation of special interests, and rendering no direct or tangible benefits to the general estate of the debtor either in its administration or in the formulation of a plan. His claim was properly denied.

The finding of the district court with respect to the fee claim of Fowler & Fowler, arising from their professional services in a proceeding in the United States District Court for the Eastern District of Tennessee, was denied on the ground that these gentlemen, who were associate counsel for a state court receiver,

performed no services in the instant proceeding, nor any services which aided in the administration of the debtor's estate, or in the formulation of the plan. It was found further that in the Tennessee proceeding the trustee was represented by his counsel, who, with the concurrence of the Securities and Exchange Commission and counsel for the debtor, took appropriate steps to protect the interest of the estate of the debtor in reorganization in the United States District Court for the Eastern District of Michigan. It was held that the Tennessee attorneys must look for their compensation to the state court receiver whom they represented. This conclusion would seem inevitable from the facts found. The position of the Tennessee law firm is unfortunate, for they rendered valuable and successful professional services in maintaining the position that the Tennessee federal court had no jurisdiction.

The district court denied the claims of the Waitman group of shareholders in both the Delaware and the Michigan corporations for fee allowances to themselves and for reimbursement of fees paid by them to their attorneys, and for other expenditures, for the reason that they had performed no services and incurred no expenses which aided in the general administration of the debtor's estate; and that their services and expenses in connection with the formulation of a plan were primarily for and of benefit to their special interests "and did not aid the general estate." There was no abuse of discretion by the district court in denying the claims of the Waitman group.

No appeals have ensued from the allowances to the special masters, who were the referees in bankruptcy of the district court; from the allowance of $560 as out-of-pocket expenses of S. J. Dyer, a shareholder of the debtor corporation; from the allowance of $500 for services rendered by Irwin H. Boesel, shareholder and former president of the debtor corporation, for services rendered in connection with the administration of the estate and formulation of the plan and for reimbursement of his out-of-pocket expenses in the amount of $250; or from the allowance of $500 in fees and $56.57 in expenses to Monaghan, Crowley, Clark & Kellogg, special counsel for the trustee, for specialized services performed for the trustee at the commencement of this proceeding. Nor have appeals been taken by John P. Neudorfer, state court receiver, or by the stockholders' committee represented by Kelley and Darden & Brashear from the disallowance of their claims.

This brings us to a consideration of the appeals from the respective allowances of $24,500 to Frank Fitzgerald, Trustee for the debtor; $65,000 for services and $2,303.78 for reimbursement of expenses to Robert S. Marx, Carl Runge, and Lawrence I. Levi, attorneys and general counsel for the trustee; $12,500 as a fee to Julian G. McIntosh, special counsel for the trustee; and $17,500 as fees and $8,544 as expenses to Fraser, Shumaker, Kendrick & Winn, attorneys for the debtor.

The allowance of $17,500 to the attorneys for the debtor seems reasonable. These gentlemen rendered valuable services, especially in the jurisdictional phase of the litigation, and cooperated in the administration of the estate, the conduct of litigation, and the formulation of the adopted plan.

In the findings of fact, the district court stated that under the seven-year trusteeship of Frank Fitzgerald the debtor's business was very ably and efficiently managed, its assets conserved and enhanced, the estate administered, its involved litigation conducted and a successful plan of reorganization brought to fruition; and that, in view of the "considerable time and talent" expended by the trustee in the proceeding, his request for final allowance of $24,500 should be granted as the reasonable value of his services. It was stated that the amount requested by the trustee, plus the $2,000 interim allowance granted him, "is some $2,000 per year less than present management salaries." The trustee had been previously allowed compensation in the amount of $10,000 for services in connection with the litigation respecting mineral rights claimed by the debtor in Louisiana lands. The Securities and Exchange Commission recommended a final allowance

to the trustee of only $10,500, which was $14,000 less than the district judge ordered to be paid to him.

In fixing the value of the services of Julian G. McIntosh as special counsel for the trustee at $12,500, the district court found that the attorney had rendered very valuable specialized services to the estate in assisting in handling "special Louisiana property and tax matters"; that the success of the Louisiana property development had been "due largely to his able efforts"; and that he had assisted the general counsel in the jurisdictional phase of the proceedings. Attorney McIntosh had requested an allowance of $18,120, but the Securities and Exchange Commission recommended $10,000, which was $2,500 less than the district court allowed.

In its findings, the district court stated that Robert S. Marx, Carl Runge, and Lawrence I. Levi, and their associates and assistants, have "performed a monumental task" and have rendered highly valuable services as general counsel for the trustee from the time of their appointment at the inception of this proceeding "down to and through their able conduct of the final fee hearings and the consummation of the Plan." It was found as a fact that these attorneys had been responsible largely for the orderly administration of the estate and the successful reorganization of the debtor; that they had participated in all phases of the proceeding, devoting more than 6,500 hours to necessary legal work; and that great demands had been made upon their time and talent. The district court found that, in view of the "vast" extent of their services, the size of the estate, the number and intricacy of the problems encountered, the responsibility involved, the learning, skill and time employed, the necessity for the services, and the results obtained, their requests for fees in the amount of $65,000 seemed modest and represented the reasonable value of their services. The Securities and Exchange Commission, however, had recommended a fee of $20,000 less than the amount awarded by the district court.

The attorneys for the trustee had been previously allowed a fee of $65,000 for their services in the mineral litigation, which had been most vigorously pressed with outstanding skill by them in an effort to bring conservatively $35,000,000 of assets into the hands of the trustee for the benefit of the debtor. Though this court held that the bankruptcy court was without jurisdiction over the subject mater, it distinctly did not hold that the claims of the trustee to the mineral rights in controversy were not meritorious. In re Mt. Forest Fur Farms of America, Inc., 122 F.2d 232, certiorari denied, 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561; rehearing denied, 315 U.S. 826, 62 S.Ct. 623, 86 L.Ed. 1222. There was certainly adequate justification on the merits of their case for the vigorous prosecution of the mineral litigation by the attorneys for the trustee; but the district court had already fixed the allowances for those services and that matter had been concluded, with no ensuing appeal before the present fee claims were presented. The allowances for services in the mineral litigation were made in the light of the settlement of the controversy effectuated by the trustee and his attorneys by the terms of which the debtor received approximately $225,000 in cash, in addition to a royalty of nine cents per ton on all future sulphur production and an approximate one-thirtieth royalty on all future oil production from an extensive acreage in Louisiana. Moreover, the owners of an overriding interest in the debtor's mineral rights agreed to pay eight percent of all reorganization expenses of the debtor, including the fee allowances under consideration.

In view of the contingent character of the undertaking, the expert advocacy displayed, and the time consumed in their worthy efforts, the fee allowances to Messrs. Marx, Runge and Levi for services in the mineral litigation are deemed reasonable and just. But, while they rendered excellent service requiring expenditure of much time and effort in the administration of the estate and in the confirmation of the plan, the fee allowance to them of an additional $65,000 is substantially more than this court could, in conscience, have allowed.

In view of the very weak cash position of the debtor which will be resultant

upon the payment of the fee allowances under consideration, of the comparatively small value of its real properties apart from the problematically realizable value of its mineral contracts, and the heavy allowances which we think have already improvidently been made from time to time by the district court, it is mild to say that this estate has not been economically administered in consonance with the principles declared in this opinion and by the authorities which have been cited. But we are not privileged to rule upon past allowances from which no appeals were taken. Nor can we say in the instant matter for adjudication that the district court abused its discretion in the final allowance by it of $65,000 compensation to the trustee's attorneys, Marx, Runge, and Levi. The same comments appropriately apply to the fee allowances by the district court to the trustee, Fitzgerald, and to his special counsel, McIntosh.

The order of the district court is affirmed.

MILLER, Circuit Judge (dissenting in part).

The claims of Harold M. Shapero and J. Adrian Rosenberg, attorneys for a group who held ranching contracts with the debtor, of Edward T. Kelley and Darden and Brashear, attorneys for a stockholders committee, and of Harley C. Waitman and others, forming a group of stockholders, for attorneys' fees, were rejected in toto by the District Court. I disagree with so much of the majority opinion as approves that disposition of those claims. The ruling in each instance appears to be based largely upon the finding that the legal services rendered in connection with the formulation of the plan were primarily for the benefit of special clients to whom the attorneys could and should look for their compensation. I do not believe that such a finding justifies the rejection of the claim, provided the services contributed to the plan. Sections 242 and 243 of the Act, Sections 642 and 643, Title 11 U.S.C.A., do not contain such a limitation, but on the contrary authorize compensation to such claimants if either the services contributed to the plan or were beneficial in the administration of the estate. They do not require that both conditions exist. These sections supersede and to some extent change the earlier provisions of Section 77B of the Bankruptcy Act dealing with allowances. See Hearings before House Judiciary Committee, 75th Congress, 1st Sess. (1937) 186; In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599, 601. To a certain extent all creditors and stockholders, and the attorneys representing them, are actuated by their personal interests, but such an interest does not prevent them from joining with others in constructing a plan which is acceptable to other parties in interest and to the Court. In my opinion, the services rendered by these attorneys contributed to the plan, regardless of the benefit which their clients derived from the plan, and should be compensated for by an allowance by the District Court. If such allowances increase the total allowances to an unreasonable amount, a general revision of all allowances would be the remedy.